UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
------------------------------------------------------------x
ANATOLY DAVYDOV,

                            Plaintiff,

        -against-                            **COMPLAINT &**
                                                            **JURY TRIAL DEMAND**
SCANDINAVIAN AIRLINES SYSTEM
a/k/a SAS, d/b/a SCANDINAVIAN AIRLINES
OF NORTH AMERICA, INC.

                            Defendant.
------------------------------------------------------------x

       Plaintiff, ANATOLY DAVYDOV, by his attorneys, KREINDLER & KREINDLER LLP, as and for his Complaint against Defendant, SCANDINAVIAN AIRLINES SYSTEM a/k/a SAS, d/b/a SCANDINAVIAN AIRLINES OF NORTH AMERICA, INC., alleges the following:

## JURISDICTION AND VENUE

       1.       The jurisdiction of this Court is founded upon 28 U.S.C. Sec. 1331, by reason of the fact that the Plaintiff's claims are governed by the Convention for the Unification of Certain Rules for International Carriage by Air done at Montreal on May 28, 1999 (hereinafter referred to as "the Montreal Convention")[1] as the result of injuries Plaintiff sustained on February 13, 2019 while disembarking SAS Flight SK1748 from Stockholm, Sweden to Tallinn, Estonia, an international air transportation operation conducted by Defendant.

       2.       At all times relevant to the claims asserted herein, Plaintiff's principal and permanent residence was and remains in the United States of America, specifically in the State of Florida.

       3.       At all times relevant to the claims asserted herein, Defendant, SCANDINAVIAN

---

[1] The Montreal Convention is a treaty ratified by the United States and which entered into force in November 2003.

AIRLINES SYSTEM (hereinafter known as "SAS"), conducted, and continues to conduct, commercial airline operations and business in the United States under the names Scandinavian Airlines System, SAS, and Scandinavian Airlines of North America, Inc.

4. In particular, SAS conducts regularly-scheduled flight operations to and from airports in the United States, including Newark International Airport in the State of New Jersey, San Francisco International Airport in the State of California, Seattle-Tacoma International Airport in the State of Washington, and Washington Dulles International Airport in the District of Columbia.

5. SAS is registered to do business in the United States of America as Scandinavian Airlines of North America, Inc., maintaining its principal executive office within this judicial district at 301 Route 17 North, Rutherford, New Jersey 07070, from which it conducts its United States business operations.

6. Scandinavian Airlines of North America, Inc. also maintains a registered agent for service of process in the State of New York at 10 East 40th Street, New York, New York 10016.

7. By reason of the foregoing, the United States, and in particular the State of New Jersey, satisfy the jurisdiction and venue requirements of Article 33 of the Montreal Convention.

**FACTUAL ALLEGATIONS**

8. At all times herein relevant, Defendant, SAS, was and is a commercial common carrier engaged in the business of international air transportation of passengers.

9. At all times herein relevant, Defendant, SAS, employs flight crews responsible for the safe and secure operation of its flights and the safety and well-being of its passengers, including embarkation and disembarkation from its aircraft.

10. At all times herein relevant, Defendant, SAS, was responsible for the training, management, supervision, and/or control of its flight and cabin crews, including but not limited to the crew's adherence to standard safety policies and protocol.

11. On February 13, 2019, Plaintiff, ANATOLY DAVYDOV, was a fare-paying passenger on SAS Flight SK1748 from Stockholm Arlanda Airport in Stockholm, Sweden (ARN) to Lennart Meri Tallinn Airport in Tallinn, Estonia (TLL) (hereinafter referred to as "the subject flight").

12. On February 13, 2019, SAS Flight SK1748 utilized a certain Bombardier CRJ-900LR jet aircraft (hereinafter referred to as "the subject aircraft") to operate the subject flight.

13. On February 13, 2019, SAS departed Stockholm at approximately 5:05 PM and landed in Tallinn at approximately 7:07 PM.

14. Flight SK1748 arrived in Tallinn in evening darkness, at which time both recorded and observed weather data confirmed the presence of inclement conditions and wet snow at the airport.

15. Embarkation and disembarkation from the CRJ-900 used to operate Flight SK1748 can be accomplished by one of two means: through the use of a short, unstable staircase with incomplete handrail access that is incorporated into the door of the aircraft, or via a ramp that can be brought to the aircraft by ground personnel.

16. On February 13, 2019, SAS utilized the door/stair system to disembark passengers upon landing of the subject flight in Tallinn.

17. At no time prior to landing at the Tallinn airport, nor at any time before it became Plaintiff's turn to exit the aircraft after he left his assigned seat in the tenth row, did any member of the flight crew or cabin crew warn him of the dangerous wet conditions of the staircase or at the

3

airport generally. Moreover, Plaintiff was not offered or provided with any assistance in navigating his way onto and down the stairs from the plane to the ground.

18. Upon stepping out of the plane and placing his foot onto the top-most section of the staircase, the dangerous and unsafe prevailing conditions of the exit stairs caused Plaintiff to fall down onto the tarmac.

19. After landing on the ground at the foot of the staircase, Plaintiff remained there in excruciating pain, lying in puddles of water and snow, unable to move for several minutes.

20. When an emergency medical team finally arrived at the accident site, Plaintiff was taken to a local hospital by ambulance where he was found to have sustained severe fractures to his right hip and femur that required lengthy and complicated surgical intervention to stabilize and repair his injuries.

21. Plaintiff remained in the Tallinn hospital for approximately eight days until he could be discharged and relocated to a private residence, from which he continued to return to hospital for medical attention, monitoring and rehabilitation.

22. On April 16, 2019, the earliest his medical condition and incomplete recovery and rehabilitation permitted, Plaintiff returned to his home in the United States to continue his recovery.

23. The injuries sustained by Plaintiff have had life-altering effects, have caused him to endure pain, suffering and great discomfort since the moment of injury, and have forced him to incur medical, hospital and ongoing rehabilitation expenses.

24. In addition to economic loss, Plaintiff has been, and continues to be, deprived of his enjoyment of life, pursuits and interests as a result of his injuries.

25. Plaintiff was injured by an "accident" in the course of disembarkation from SAS Flight SK1748 within the meaning and intent of Article 17 of the Montreal Convention insofar as his injuries were caused by a chain of unexpected and unusual events that occurred external to him. In particular:

a. The prevailing inclement weather conditions that increased the danger of injury to passengers while disembarking the subject aircraft upon landing of the subject flight;

b. The failure of any member of the flight crew or cabin crew to warn Plaintiff of those dangerous conditions;

c. The failure of any member of the flight crew or cabin crew to assist passengers, including Plaintiff, in navigating the exit from the plane via the dangerous and unstable staircase;

d. The crew's failure to utilize a safe passenger disembarkation method and equipment in light of conditions that prevailed at the time SAS Flight SK1748 passengers disembarked;

e. The deviation from airline protocol, practices, and procedures by the flight crew and cabin crew in minimizing the risk of injury and permitting passengers to be exposed to a serious safety hazard upon disembarkation; and

f. The deviation from airline protocol, practices, and procedures by the flight crew and cabin crew in permitting passengers to disembark the subject flight without offering any form of warning about, or assistance in navigating, the dangerous prevailing disembarkation conditions.

26.     Based on the foregoing, Article 17 of the Montreal Convention renders Defendant strictly and absolutely liable to pay full, fair and reasonable damages to Plaintiff for the totality of compensable injuries and damages sustained.

27.     Defendant cannot limit its liability under Article 21 of the Montreal Convention by reason of the fact that it cannot show that its negligence did not cause or contribute to the aforesaid accident and the resulting injuries to Plaintiff, nor can it prove that the injuries suffered by Plaintiff were caused solely by the acts of third parties.

WHEREFORE, Plaintiff, ANATOLY DAVYDOV, hereby demands judgment against Defendant, SCANDINAVIAN AIRLINES SYSTEM a/k/a SAS, d/b/a SCANDINAVIAN AIRLINES OF NORTH AMERICA, INC., in an amount to be determined at trial, together with interest, costs and disbursements of this action.

## JURY DEMAND

Plaintiff demands a jury of eight (8) persons for all claims stated.

Dated:  September 4, 2019
        New York, New York

                                        KREINDLER & KREINDLER LLP

                                        _____
                                        Brian J. Alexander (BA9435)
                                        Marc S. Moller
                                        750 Third Avenue, 32nd Floor
                                        New York, NY 10017
                                        Tel. (212) 687-8181
                                        *Attorneys for Plaintiff*